UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD J. PHILLIPS and GEORG-ANNE PHILLIPS,<br><br>                    Plaintiffs,<br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY, et al.,<br><br>                    Defendants. | Civil No.02cv1642-B (NLS)<br><br>**ORDER DENYING AS MOOT INTERVENORS' MOTION TO MODIFY THE COURT'S PROTECTIVE ORDER ENTERED JUNE 13, 2003**<br><br>[Doc. No. 27] |

Having been granted permission by the District Court to intervene in the above-captioned action, Leroy Haeger, Kori D. Haley, Margaret Rose Bogaert, Billy Wayne Woods, and John H. Schalmo (collectively "Intervenors") move this Court to modify its June 13, 2003 Protective Order in the interests of justice and for public policy reasons. Defendant Goodyear Tire & Rubber Company ("Goodyear") opposes the motion. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court **DENIES AS MOOT** Intervenors' motion [Doc. No. 27].

## PROCEDURAL BACKGROUND

This case originated as a product liability action, filed on June 19, 2002 in San Diego County Superior Court by Plaintiffs Harold and Georg-Anne Phillips against Goodyear. Plaintiffs alleged that Goodyear's G159 275/70R/22.5 tire (the "G159 tire") was defective in design and/or manufacturing and unsafe when used for its intended purpose after a tire on their motor home experienced tread/belt separation, causing them to lose control of their vehicle, collide with an adjacent embankment and

sustain serious bodily injury and property damage. (*Complaint* ¶¶ 10-15.) On August 15, 2002, Goodyear removed the case to this Court [Doc. No. 1]. Subsequent to the commencement of discovery and the entry by this Court of a Protective Order stipulated to and requested by the parties [Doc. No. 22], the case settled. A stipulation for dismissal of the action with prejudice was entered on October 7, 2003, and the case was closed [Doc. No. 24].

On June 28, 2007, Intervenors filed a motion seeking to intervene in this action for the limited purpose of petitioning the Court to modify its Protective Order and allow Intervenors access to deposition testimony of a Goodyear employee taken pre-settlement in this case for purposes of discovery in ongoing collateral litigation involving the G159 tire in federal and state courts throughout the country [Doc. No. 27]. Over Goodyear's opposition, this Court recommended that presiding District Judge Rudi M. Brewster grant the motion to intervene so that the Court could determine whether its Protective Order should be modified [Doc. No. 35]. On October 31, 2007, Judge Brewster adopted the recommendation and allowed the intervention [Doc. No. 39].[1] Intervenors now request that the Court modify the June 13, 2003 Protective Order to allow them the opportunity to discover the June 20, 2003 deposition testimony of former Goodyear employee Kim Cox. (*Intervenors' Motion*, 14.)

## FACTUAL BACKGROUND

In June 2003, Plaintiffs' counsel Guy Ricciardulli noticed the deposition of the Goodyear employee most knowledgeable with respect to the processing of property damage claims, particularly the Phillips' prior claims.[2] (*See Declaration of Guy Ricciardulli in Support of His Response in*

---

[1] In his October 31, 2007 order, Judge Brewster adopted the undersigned magistrate judge's report and recommendation and granted Intervenors' motion to intervene, which was filed contemporaneously with Intervenors' motion to modify the Court's June 13, 2003 Protective Order. Upon granting the intervention, Judge Brewster requested that the undersigned prepare a further report and recommendation on the motion to modify, as well as Defendant's request for a contempt finding against Plaintiffs' counsel. (*See October 31, 2007 Order Adopting Report and Recommendation*, Doc. No. 39, 3-4.) Under 28 U.S.C. § 636(e), the undersigned shall prepare a separate report and recommendation for the District Judge regarding Defendant's contempt motion. Pursuant to Paragraphs 13 and 15 of the Protective Order [Doc. No. 22], the undersigned retained jurisdiction to enforce the terms of the order, and may "modify this stipulated protective order in the interests of justice or for public policy reasons." Accordingly, Intervenors' motion to modify may be ruled upon directly by the undersigned, and the preparation of a report and recommendation is not necessary.

[2] In June 2000 Plaintiffs purchased a Windsor motor home, equipped with G159 tires, at a motor home retailer in San Diego. (*Complaint* ¶ 6.) In August 2000, Plaintiffs made an initial claim to Goodyear after two of the tires on the left rear side of the motor home failed, damaging the rear of the vehicle. (*Id*., Ex. "1," at 3.) After inspection of the failed tires, Goodyear reimbursed Plaintiffs for the cost of both replacement tires and for the repair of the transmissions lines and power steering lines. (*Id*.) In February 2002, Plaintiffs once again experienced trouble with the tires on their motor home. While

*Opposition to Goodyear's Application for Order to Show Cause ("Ricciardulli Declaration")* ¶ 4.) On or about June 19, 2003, counsel for the parties traveled to Akron, Ohio, where Goodyear tendered claims administrator Kim Cox for deposition. (*Id.*) Ricciardulli recalls that in response to his questioning, Cox stated that Goodyear "was aware of the fact" that the G159 tire "did not perform properly" when used on Class A motor homes. (*Id.* ¶ 5.) Ricciardulli also recalls having interpreted this statement as an admission of liability by Goodyear, which resulted in Goodyear's counsel present at the deposition, John McCormick, requesting a recess in the deposition. (*Id.* ¶ 6.) Subsequent to the break, McCormick approached Ricciardulli regarding termination of the deposition and potential mediation. (*Id.* ¶ 7.) The case settled shortly thereafter.

In their role as plaintiffs involved in discovery in collateral litigation around the country, Intervenors have alleged that the G159 tire is defective when used on Class A motor homes and that they have suffered property damage and, in some cases, extensive personal injury and death of family members, as a result of accidents caused by the tires. (*See Intervenors' Motion*, Exhibits 2-7.) During the course of gathering information and evidence for potential use in one of these collateral cases, Intervenors' counsel Tim Casey contacted Guy Ricciardulli. (*Intervenors' Motion,* Ex "8," *Affidavit of Timothy J. Casey, Esq.* (*"Casey Affidavit"*) ¶¶ 3-5.) On May 24, 2007 and several dates soon thereafter, Casey and Ricciardulli spoke telephonically regarding the 2003 deposition of Kim Cox. (*Id.* ¶ 5.) According to Casey, Ricciardulli informed him that the Phillips' case involved the same tire and alleged defect at issue in his clients' litigation. (*Id.* ¶ 6(a).) Ricciardulli recalled that on June 20, 2003 in Akron, Ohio, he was present at the deposition of a Goodyear employee from the in-house liability claims team, who admitted under oath that "there was a defect in the G159 when used on a motor home," and "that they [i.e., Goodyear] had a problem and paid the claim." (*Id.* ¶¶ 6(c)-(f).) Ricciardulli also recalled that as part of the settlement of the case which occurred subsequent to the termination of the deposition, he stipulated to having the court reporters' notes/recordings of the deposition returned to Goodyear's

---

traveling on Interstate 10 in Arizona, the tread separated from the motor home's left front tire, causing Plaintiffs to lose control of the vehicle and crash into a roadside embankment. (*Complaint* ¶ 10.) Approximately one month later, in March 2002, Plaintiffs initiated the claims process by contacting Goodyear's Liability Claims Team regarding the incident, alleging breach of the tire's warranty. (*Id.* ¶ 19.)

counsel. (*Id.* ¶ 6(h).) Casey then confirmed with the court reporting service in Ohio that Cox was deposed on June 20, 2003, that the deposition was never transcribed, that all other noticed depositions in the case had been cancelled, and that the notes of the Cox deposition had been forwarded to Goodyear's counsel on October 1, 2003 for "destruction." (*Id.* ¶¶ 7-9.)

According to Intervenors, Goodyear denies the G159 tire is defective, including when used on a Class A motor home. (*Intervenors' Motion*, 3; *Casey Affidavit* ¶ 10.) Because the testimony of Goodyear employee Kim Cox appears to directly contradict Goodyear's denial of a tire defect, Intervenors seek to discover the information revealed during the course of Cox's deposition in their collateral lawsuits. (*Id.*) After being informed by the court reporting service in Ohio that no transcript or notes presently exist documenting the deposition testimony, Intervenors issued deposition notices and subpoenas in the pending litigation for the deposition of Goodyear's counsel who defended the Cox deposition, John McCormick, the court reporters who handled the Cox deposition, and Goodyear employee, Mr. Cox. (*Intervenors' Motion*, 12-14.) In at least one of these collateral cases, currently pending in the District of Arizona, Goodyear moved to quash the deposition notices and subpoenas, arguing that Cox's deposition testimony is confidential, protected by this Court's June 13, 2003 Protective Order, and therefore not discoverable in the collateral cases. The presiding District Judge in the Arizona case ruled that the depositions may go forward, but also found that this Court's June 13, 2003 Protective Order currently limits what can be discussed during these depositions. Specifically, the Arizona District Judge ordered that

> "[n]o individuals may be asked questions or testify regarding what was said in the Phillips depositions. . .if Plaintiffs wish to refresh the individuals' recollection or impeach them with prior deposition testimony, they will need to seek relief from the Protective Order in the United States Court for the Southern District of California."

(*See July 2, 2007 Order of the District Court of Arizona, Hon. Roslyn O. Silver presiding*, Doc. No. 266, Civil No. 05-2046-PHX-ROS.)

Intervenors argue that Goodyear is using this Court's Protective Order to prevent the truth about Cox's June 20, 2003 deposition testimony from being revealed and potentially relied upon as evidence in their collateral litigation. For public policy reasons and in the interest of avoiding duplicative discovery, Intervenors seek modification of the Court's Protective Order so that any remaining discovery materials

from the 2003 Cox deposition can be accessed in their collateral litigation, and so that percipient witnesses to the 2003 Cox deposition can be deposed on the substance of Cox's testimony. Goodyear opposes the modification, arguing that the potential prejudice to Goodyear's substantive rights balanced against public interest and judicial economy weighs against the modification.

## DISCUSSION

The public is permitted "access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a Protective Order is necessary." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) ("It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." (*quoting San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir.1999))). "A party who has never made a 'good cause' showing under Rule 26(c) justifying initial protection of disputed documents may not rely solely on the Protective Order to justify refusal when there is a reasonable request for disclosure." *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 (N.D.Cal. 2005) (*quoting Verizon California, Inc. v. Ronald A. Katz Tech. Licensing*, L.P., 214 F.R.D. 583, 586 (C.D.Cal. 2003) (citations omitted)).[3] Courts have broad discretion in determining what constitutes good cause, whether good cause exists, and, if it does exist, what protection is appropriate. *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984) ( "broad discretion [is conferred] on the trial court to decide when a Protective Order is appropriate and what degree of protection is required" ); *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1074 (9th Cir. 2002) (noting court has "extensive control" over discovery process); *Phillips*, 307 F.3d at 1211. As the party opposing modification of the Protective Order,

---

[3] Blanket protective orders such as the one in effect in this case are generally entered upon an "some threshold showing of good cause to believe that discovery will involve confidential or protected information. This may be done on a generalized as opposed to a document-by-document basis." *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group*, 121 F.R.D. 264, 268 (M.D.N.C. 1988). However, "blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document" or thing. *San Jose Mercury News v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999). Essentially, a blanket protective order defers litigation of the need for protection on a document-by-document basis, and postpones the need for a party to make a particularized showing of "good cause" until a challenge is made to the designation of a particular document or thing as confidential.

Goodyear bears the burden of showing "good cause" for protecting the Cox deposition testimony from discovery in Intervenors' collateral litigation. *Phillips*, 307 F.3d at 1211, n. 1 (*citing Beckman Industries Inc. v. International Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992)).

The Ninth Circuit has determined that, where access to unfiled discovery documents is at issue, the "party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no Protective Order is granted. *Phillips*, 307 F.3d at 1210-11 (*citing San Jose Mercury News*, 187 F.3d at 1102); *see also Beckman*, 966 F.2d at 476 ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (*quoting Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1986) (internal quotation marks omitted)); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D.Md. 1987) (requiring party requesting a Protective Order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm")." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003). The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Id*. at 1136.

Intervenors maintain that the Court's Protective Order should be modified so that it does not bar the discovery of Cox's deposition testimony in their collateral cases. In *Foltz*, *supra*, the Ninth Circuit considered third-party collateral litigants' motion to modify a Protective Order to gain access to discovery materials that had been protected as confidential. The collateral litigation in state court involved issues similar to the federal action which had been settled and in which certain documents were obtained in discovery under a Protective Order keeping them confidential. The third-party litigants sought access to these documents and other sealed court records. In order to obtain the confidential discovery documents for the state court collateral litigation, the Protective Order first had to be modified by the issuing federal court. The *Foltz* court recognized the policy of strongly favoring "access to discovery materials to meet the needs of parties engaged in collateral litigation," and held that in determining whether to modify a Protective Order so that it does not stand in the way of a collateral court's control of discovery, the issuing court must evaluate the request to modify on a case by case basis, examining, for instance, the complaints in both actions to make a rough determination of

relevancy,[4] and the intensity of the reliance interest of the party opposing the modification. *Id.* at 1132-33.

*Foltz* also held that the issuing court must in the first instance determine whether a Protective Order should apply to specific documents or information under Rule 26(c). *Id*. at 1133. If a court determines that its order does not protect the sought-after information, the court need not engage in the *Foltz* analysis, as modification of its Protective Order is simply not necessary. The Court notes that both Goodyear and Intervenors tacitly assume that Cox's deposition testimony is presently protected as "confidential information" under the June 13, 2003 Protective Order. Accordingly, Intervenors have not challenged whether Goodyear actually designated the Cox deposition testimony as confidential. Intervenors only challenge whether the deposition testimony is entitled to remain confidential. However, under *Foltz*, the Court must decide as a threshold question whether its Protective Order in fact protects the Cox deposition testimony. In order to resolve this question, the Court first looks to the applicable terms of its Protective Order. Section One, Paragraph A of the Protective Order defines the term "confidential," and states:

> The words "confidential," "confidential information," and "confidential material" describe information which is or contains trade secrets, research, development and other proprietary matters including, but not limited to, methodology, technique, process, control, and evaluation which any party believes in good faith pertains to its trade or business and has independent value from not being generally known and not being readily ascertainable by other persons who may obtain economic value from its disclosure or use. In addition, such information is not normally revealed to others except in confidence and is not revealed to others in the party's trade or business and is of a type that the party has made efforts to maintain as secret.

(*See June 13, 2003 Protective Order*, Doc. No. 22, 2.) Paragraph B contemplates the consequence of a confidential designation, and states:

> Information designated as "confidential" or "confidential information" or "confidential material" shall be considered trade secret and fully protected by this order. All portions of transcripts, depositions, exhibits, or other pleadings or filings in this action which contain or otherwise set forth documents, information, or other materials, or contents thereof, which have been previously designated as confidential, shall likewise be subject to the terms of this protective order.

---

[4] The Court previously determined that Intervenors have satisfied the relevancy requirement, holding that "the underlying commonality between Applicants' claims and the claims in this case lies with the allegation that Goodyear's G159 275/70R/22.5 tire is defective when used on Class A motor homes." (*See Court's July 13, 2007 Report and Recommendation*, Doc. No. 35, 5.)

7

02cv1642

1  (*Id.*) Section Two, Paragraph Three, specifically refers to the treatment of deposition testimony relating
2  to or discussing information designated as confidential, and states that:

3  > Deposition testimony relating to or discussing Goodyear's confidential
4  > information shall be protected under this ORDER and the transcript of such
5  > testimony shall be marked with the Confidential legend of Paragraph 1. The
6  > transcripts of such deposition testimony shall be treated the same under this
7  > ORDER as other documents Goodyear marks as confidential. The parties
8  > stipulate that the court reporter or videographer for any such deposition will be
9  > given a copy of this Protective Order, will execute an acknowledgment thereof
10 > and shall not disclose to anyone other than those specified in Paragraph 2 any
11 > deposition testimony or exhibit in this case.

8  (*Id*. at 4.) Pursuant to these terms, in order for any portion of Cox's deposition testimony to be subject
9  to protection, that testimony must have been designated by Goodyear as "confidential information."
10 This constitutes a threshold matter, because if Goodyear did not designate the deposition testimony as
11 relating to or discussing confidential information, the testimony is not protected and the motion
12 requesting modification of the Protective Order is moot.
13     Goodyear asserts that it designated the entire deposition testimony of Cox as confidential and
14 protected under the terms of the Court's Protective Order. Goodyear has not produced any document
15 that demonstrates the deposition was so designated. Rather, Goodyear relies on the hearsay declaration
16 of counsel John McCormick, who attended the Cox deposition, submitted in support of Goodyear's
17 opposition to Intervenors' motion. In his declaration, McCormick states:

18  > Because Mr. Cox was being deposed regarding Goodyear's confidential
19  > information relating to its handling and evaluation of a property damage claim,
20  > the deposition was declared to fall within the protections of the protective order,
21  > and Plaintiffs' counsel, Mr. Ricciardulli, agreed to this designation and did not
22  > challenge it.

22 (*McCormick Declaration* ¶ 4.) In direct contradiction to this statement, Ricciardulli submitted his own
23 hearsay declaration, in which he explains his understanding of the applicability of the stipulated
24 Protective Order to deposition testimony:

25  > When I reviewed and signed the proposed Protective Order in the instant matter in
26  > 2003, it was my understanding that the Protective Order would treat as
27  > confidential, only 'trade secrets, research, development and other proprietary
28  > matters . . . ' - as the language of the Protective Order itself provides. I understood
   > however, that deposition testimony of Goodyear employees could be entitled to
   > confidentiality, *if* that testimony related to such 'trade secrets, research,
   > development or other proprietary matters.' I did not believe, nor consider, that an
   > admission of liability . . . by a Goodyear representative (designated by Goodyear

1 | as a Rule 30(b)(6) witness) could be properly treated as a proprietary or
2 | confidential business secret, such that it was entitled to protection from disclosure under the Protective Order.

3 (*Ricciardulli Declaration* ¶ 3.)  Ricciardulli goes on to state:

> I don't recall ever having any discussion with Mr. McCormick regarding the applicability of the provisions of the Protective Order to the transcript of the Cox deposition.  I have reviewed Mr. McCormick's declaration wherein he states and/or implies that I stipulated that the transcript, in its entirety, would be treated as confidential.  I have to believe that if I had entered into such an extraordinary stipulation, I would remember having done so.  I can state unequivocally that it was never my intent to so stipulate, and treat as confidential, the above-referenced testimony by Mr. Cox.  I did not then believe, nor do I now believe, that such an admission falls within the category of 'trade secret or other proprietary information' entitled to confidentiality under the Protective Order.

(*Id.* ¶ 9.)

Goodyear also brings to the Court's attention several letters exchanged in May 2003 between McCormick and Ricciardulli, and letters exchanged in August and October 2003 between McCormick and the court reporting service in Ohio hired to transcribe the Cox deposition.  A May 7, 2003 letter from McCormick's law firm to Ricciardulli discusses Plaintiffs' demand for production of documents at upcoming Rule 30(b)(6) depositions.  In pertinent part, the letter states:

> We are waiting on your and Mr. Regan's signatures on the protective order.  If we receive those signatures soon, you should have the documents prior to the depositions.  Having a protective order in place will also expedite the production at deposition of any additional documents which Goodyear considers trade secret, proprietary, or otherwise confidential.

(*McCormick Declaration*, Ex. "B.")  A May 27, 2003 letter from McCormick to Ricciardulli once again refers to pre-deposition document production requests, and the fact that Goodyear would not produce documents until the Court had approved and entered the proposed Protective Order.  (*Id.*, Ex. "C.")  Additionally, that letter states:

> In connection with the documents to be produced at deposition, to the extent they are not included in the previously requested documents, they will be, subject to appropriate objection and the protective order, produced at deposition.

(*Id.*)  An August 19, 2003 letter written by McCormick, co-signed by Ricciardulli, to the court reporting service in Ohio instructed the court reporter who transcribed the Cox deposition to return "the original and all copies of your notes and the transcription of that deposition" for "destruction."  (*Casey Affidavit*, Ex. "A.")  Finally, an October 1, 2003 letter from the court reporting service to McCormick confirmed

that the notes and exhibits from the deposition had been returned to Goodyear, and that the deposition was never transcribed. (*Id.*, Ex. "B.")

Goodyear argues that these letters when considered in tandem with John McCormick's declaration conclusively establish that the entire Cox deposition was designated confidential and subject to the Court's Protective Order. The Court disagrees. At most this evidence indicates that Goodyear contemplated there would be documents used at the deposition that it considered confidential pursuant to the terms of the Protective Order. This evidence does not, however, support Goodyear's assertion that the entire Cox deposition was designated confidential. To begin with, the terms of the Protective Order drafted by Goodyear make no provision for pre-designating or post-designating an entire deposition as confidential. Section 2, paragraph 3 of the Protective Order clearly states that *portions* of depositions which refer to documents or information "previously designated" as confidential would likewise be protected under the order. (*See June 13, 2003 Protective Order,* Doc. No. 22, 4.) (emphasis added) Moreover, in his declaration, Ricciardulli says he does not recall making any agreement with McCormick to treat the entire Cox deposition as confidential, and if he had entered into such "an extraordinary stipulation," he would remember it. (*Ricciardulli Declaration* ¶ 10.)

Goodyear was the last party to have custody and control of the returned deposition exhibits, as well as the court reporter's notes. Because Goodyear destroyed these documents, they also destroyed any evidence that confidential documents were in fact used or relied upon by Cox while testifying, as well as any evidence that the entire deposition was designated confidential before or after the deposition was terminated. This destruction of the exhibits and notes, although purportedly done in light of the Protective Order's terms and pursuant to the parties' settlement of the case, was done at Goodyear's own peril, as Goodyear now stands before this Court unable to prove that Cox's deposition testimony was designated confidential and subject to the protection of the Court's June 13, 2003 Protective Order.[5]

---

[5] This destruction was particularly risky given the fact that at the time there were other pending lawsuits alleging a defect in the G159 tire. Intervenors bring to the Court's attention six lawsuits filed in other jurisdictions prior to the Phillips' suit, including *England v. Goodyear* in the District of South Carolina (Case No. 5:01cv05026-AWB); *Wright v. Goodyear* in the 249th Judicial District of Texas (Case No. C 2000 0090); *Cooner v. Goodyear* in Alabama state court (Case No. CV-01-667); *Dutilly v. Goodyear* in Arizona state court (Case No. C20030834); *Price v. Goodyear* in Alabama state court (Case No. CV-02-2782-GWN); and *Cluff v. Goodyear* in the Southern District of Mississippi (Case No. 1:04cv51GURO). (*Intervenors' Motion*, 7-8.)

Goodyear asserted during oral argument that because it presented Cox for deposition as the employee most knowledgeable on claims procedures, and because Goodyear has always considered its in-house claims procedure to involve proprietary matters and information otherwise held confidential by the corporation, his testimony was impliedly protected by the terms of the Protective Order.[6]  Goodyear argued that any statements made by Cox during his deposition concerning the G159 tire's performance would have included proprietary information because of his high level position within the company and his base of knowledge concerning Goodyear's products.  However, Goodyear presents no documentary evidence to support this assertion.  As noted above, Goodyear destroyed the allegedly confidential documents upon which Cox relied during the deposition, as well as the court reporter's notes of his testimony.  Therefore, Goodyear cannot establish that Cox relied upon proprietary matters or trade secret information when testifying, nor that Cox actually testified regarding proprietary matters or trade secret information.  In fact, in its written submissions to the Court, Goodyear contradicts the assertion that Cox testified to, or was expected to testify to, confidential information, as the Protective Order defined that term, by stating that it tendered Cox as a fact witness - not a Rule 30(b)(6) witness, a designation to which Goodyear specifically objected.[7]  According to McCormick:

> In the course of discovery, Plaintiffs' counsel requested depositions of Goodyear designees on several topics pursuant to Rule 30(b)(6).  Although I timely objected to his designation as a Rule 30(b)(6) witness, I agreed to arrange for the June 19, 2003 deposition of Mr. Kim Cox, a Goodyear employee, to testify regarding the resolution of a property damage claim that the Plaintiffs had submitted to Goodyear prior to the accident involved in this litigation.

(*McCormick Declaration* ¶ 3.)  Thus, Goodyear presents the Court with contradictory statements regarding Cox's witness designation, which significantly undermines the Court's ability to make any inference as to the applicability of the Protective Order to his testimony.

In the Ninth Circuit, in the absence of a court order to the contrary, fruits of pre-trial discovery

---

[6] The Protective Order defines "confidential" information as information which "is or contains trade secrets, research, development, and other proprietary matters regarding methodology, technique, process, control, and evaluation." (*See June 13, 2003 Protective Order*, Doc. No. 22, 2.)

[7] Based on counsels' own recollections of events, the Cox deposition specifically involved resolution of Phillips' prior property damage claim with Goodyear, and it is questionable whether testimony on that topic would be considered proprietary or trade secret material.  Ricciardulli asserts that he "never considered that the subject testimony by Mr. Cox fell within the category of 'trade secret or proprietary information.'  In fact, in the course of resolving his prior claim with Goodyear, that similar information about the G159 tire had been communicated directly to my client [the Phillips]" and was not treated in a confidential manner by Goodyear. (*Ricciardulli Declaration* ¶ 8.)

are presumptively public. *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). The plain language of the Protective Order in this case created an affirmative obligation of the parties to designate information, documents, and deposition testimony as "confidential." Without evidence of such a designation, where the definition of "confidential" was aimed at protecting trade secrets and proprietary matters from Goodyear's potential competitors, and considering the unreliable and contradictory memories of counsel, the Court cannot conclude that Cox's deposition testimony is subject to the terms of its Protective Order. Accordingly, the Court finds that Cox's June 20, 2003 deposition testimony is not confidential, and modification of the Court's Protective Order is not necessary in order for this information to be potentially discoverable in Intervenors' collateral litigation.

Based on the Court's findings above, further analysis under *Foltz* is not necessary. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003). However, even if Goodyear had established the confidentiality of Cox's deposition testimony, Goodyear fails to demonstrate good cause for continued protection of the testimony. *Id.* at 1131 (*citing Beckman*, 966 F.2d at 476). As the party opposing modification, Goodyear must establish that specific harm or prejudice will result from disclosure of the information. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). A "particularized showing," *Foltz*, 331 F.3d at 1138, under the "good cause" standard of Rule 26(c) will "suffice[ ] to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." *Id.* at 1135. The court that issued the protective order must weigh the "countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133.

Goodyear first argues that modification of the Protective Order will harm the interests of judicial economy. (*Defendant's Opposition*, 9.) In support, Goodyear highlights the fact that because it destroyed the Cox deposition notes and exhibits, modification of the Protective Order will result in the "creation of new discovery" in the form of multiple depositions being taken in order to try and recreate a record of Cox's 2003 testimony. Goodyear asserts that the potential proliferation of discovery directly implicates the Ninth Circuit's admonition against wasteful and duplicative discovery. (*Id.*, *citing Foltz* at 1132.) Intervenors note in reply that "the fatal problem with this argument is that it rewards Goodyear for destroying evidence." (*Intervenors' Reply*, 4.) The Court agrees that Goodyear should not be able to

turn its handling of the evidence in this case in 2003 into good cause five years later for barring access to the information. The Court disagrees with Goodyear's suggestion that modification of the Protective Order will result in wasteful or duplicative discovery. Allowing collateral litigants to access Cox's deposition testimony will at most result in the depositions of a handful of people who were present at the Cox deposition on June 20, 2003 in an effort to determine whether he admitted a defect in the G159 tire.[8]

Goodyear also argues that its reliance interest on the Protective Order weighs heavily against modification. (*Id*. at 10.) Goodyear contends that it relied on the Protective Order as well as its settlement with the Phillips family, to protect Cox's testimony. (*Defendant's Opposition*, 10.) Goodyear states that modification of the Protective Order will undermine Goodyear's own proper compliance with the order, as well as its handling of the deposition notes and exhibits. (*Id*.) However, as the *Foltz* court noted, "[r]eliance will be less with a blanket [protective] order, because it is by nature over-inclusive." *Foltz*, 331 F.3d at 1138 (*citing Beckman*, 966 F.2d at 476). Because Goodyear drafted and then obtained the blanket protective order without making a particularized showing of good cause with respect to any particular documents or any specifically anticipated depositions or portions of testimony, and because this case settled so quickly into the discovery process, Goodyear's reliance on the Protective Order was minimal. *See id*. (citations omitted). Thus, even if Cox's testimony was confidential and subject to protection, Goodyear fails to establish good cause for why the testimony should continue to be protected.

Finally, Intervenors argue that Goodyear's attempt to withhold access to Cox's 2003 testimony violates a strong public policy compelling the disclosure of information related to the health and safety of motorists.[9] (*Intervenors' Motion*, 17.) Paragraph 15 of the Protective Order states in pertinent part that

---

[8] As Goodyear points out, Cox has been and will continue to be deposed in product liability cases involving the G159 tire. Therefore, the court's ruling on the present motion affects the question of whether he can be asked if he admitted a tire defect when deposed in this case.

[9] Intervenors cite to applicable federal laws that place an affirmative obligation on companies like Goodyear to report to the government, public, and consumers when a tire's use on a particular type of vehicle renders it a defective product, and to maintain a record of product malfunctions. *See Intervenors' Motion*, 17, *citing* 49 U.S.C. § 3118(c)(1) and 49 C.F.R. § 576.6, "Regulations Relating to Transportation: Record Retention," which states in pertinent part:

> Records to be maintained by manufacturers under this part include all documentary materials, films, tapes, and other information-storing media that contain information concerning malfunctions that may be related to motor vehicle safety. Such records include, but are not limited to, reports and other documents, including material generated or communicated by computer, telefax or other electronic means, that are related to work performed under warranties; and any lists, compilations, analyses, or discussions of such malfunctions

"[t]he Court may modify this stipulated protective order in the interests of justice or for public policy reasons." The important public interest in safety implicated by this case and Intervenors' collateral litigation demands the disclosure of information related to a potential product defect in the G159 tire. Therefore, even if Cox's testimony were protected under the terms of the Protective Order, the Court would modify its order to allow Intervenors to discover what he stated during that deposition.

## CONCLUSION

Based on the foregoing reasons, the Court **DENIES AS MOOT** Intervenors' Motion to Modify the Court's Protective Order Entered June 13, 2003 [Doc. No. 27]. The Court further **ORDERS** that the Clerk of this Court **UNSEAL** Document Numbers 27, 37, 45, 48, 51, and 53 in light of the Court's ruling.

**IT IS SO ORDERED**.

DATED: January 28, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge

---

contained in internal or external correspondence of the manufacturer, including communications transmitted electronically.

*See also U. S. v. Firestone Tire & Rubber Co.*, 455 F.Supp. 1072, 1082 (D.D.C.,1978)(holding that "15 U.S.C. § 1397[a] empowers the Secretary of Transportation, and by delegation NHTSA, to prohibit the manufacture and sale in interstate commerce any substandard motor vehicle or piece of motor vehicle equipment. 15 U.S.C. § 1401(c) allows for the Secretary, and by delegation NHTSA, to conduct investigations and issue special orders such as the one at issue here, for the accomplishment of any of the purposes outlined in the Act. It is clear that automobile tires are motor vehicle equipment.")